**YORK LUMBER COMPANY, Inc.**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND.**

**Civ. A. No. 69–590.**

United States District Court,
E. D. Pennsylvania.

Sept. 13, 1971.

Henry A. Stein, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for plaintiff.

Christopher Walters, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff, York Lumber Company, Inc. ("York"), commenced this action against defendant, Fidelity and Deposit Company of Maryland ("Fidelity"), upon a fidelity bond executed in March, 1964, under which Fidelity insured York up to a maximum of $25,000.00 against losses caused by the fraud or dishonesty of York's employees. Fidelity has moved for summary judgment averring, *inter alia,* that York's claim is excluded by the plain language of the contract between the parties. The motion is granted.

The evidence, viewed in a light most favorable to York,[1] is as follows. In April, 1968, York, the owner and operator of a lumber and roofing supply yard, was advised by its accountants that a sudden and unexplained decrease had occurred in its gross profit percentage for the quarter ending February 28, 1968. York conducted an investigation to determine the cause of the loss and discovered, through profit and loss computations, that only roofing shingles, one of the eight types of merchandise sold,

---

1. "It is well settled that on a motion for a summary judgment the court must take that view of the evidence most favorable to the party against whom the motion is directed * * *." Janek v. Celebrezze, 336 F.2d 828, 834 (3 Cir. 1964).

showed an unexplainable decrease in its profit percentage. York also hired a private investigator who maintained an obvious presence at the lumber yard. During the months when the investigator was on duty the profit percentage for roofing shingles returned no normal levels. Shortly thereafter, York filed a claim under its bond with Fidelity averring that the loss was due to the dishonesty of its own employees.

York in its proof of loss under the fidelity bond claimed the sum of $24,047.-00 [2] from Fidelity which represented the total of York's losses for roofing shingles for the quarter ending February 29, 1968, in the amount of $12,045.00, and York's losses for the same item for the quarter ending November 30, 1967, estimated at $12,000.00.

In support of its allegation that the loss was due to employee dishonesty, York relies upon a two-step argument. First, York states that the financial computations made during its investigation conclusively prove that a loss did occur. Second, York states that it can prove that the loss could only be the result of employee dishonesty because the roofing shingles could not have been taken by anyone other than an employee of York.

Fidelity, however, rejected York's claim contending, *inter alia,* that Section 2(b) of the fidelity bond excludes the claim of York because it is dependent upon profit and loss computations to prove the factual existence of the loss and its amount. Thereafter, York commenced this action.

Section 2(b) of the fidelity bond excludes certain claims from the coverage of the policy and provides as follows:

Section 2. This Policy does not apply: * * *

(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, either to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees;

* * *

Section 2(b) is a standard exclusion provision which has been incorporated into many fidelity bonds since its first adoption in 1957. Its purpose is to protect insurers from claims which are based upon business records of the insured and, therefore, less reliable than other evidence of employee dishonesty. The second portion of the section is a proviso which abrogates the impact of the section when the insured can prove his claim by evidence wholly independent of his business records.

Section 2(b) has been interpreted by many courts throughout the country with differing results. Two distinct lines of cases have developed with regard to the interpretation of the proviso. One line of cases holds that computations may be introduced in support of a claim only to corroborate other evidence which, standing alone, could prove both the existence and the full amount of the loss. *See* Gillette Company v. Travelers Indemnity Co., 365 F.2d 7 (7 Cir. 1966); Paramount Paper Products Co. v. Aetna Casualty and Surety Co., 182 Neb. 828, 157 N.W.2d 763 (1968); Gotcher Engineering and Manufacturing Co., Inc. v. United States Fidelity and Guaranty Co., 193 So.2d 115 (S.Ct., Miss.1966); Locke Distributing Co. v. Hartford Accident and Indemnity Co., 407 S.W.2d 658 (Ct.App., Mo.1966); Mid-Continent Stores, Inc. v. Central Surety and Insurance Corp., 377 S.W.2d 567 (Ct.App., Mo.1964). The other line of cases, however, holds that such computations may be introduced as the only available proof of the full amount of the loss when there is applicable proof from other

---

2. There appears to be an unexplained $2.00 error in addition in the proof of loss.

facts or circumstances of employee dishonesty. *See* Sommer v. General Insurance Co. of America, 22 Ohio App.2d 149, 259 N.E.2d 142 (1970); American Fire and Casualty Co. v. Burchfield, 285 Ala. 358, 232 So.2d 606 (1970); Meyer Jewelry Co. v. General Insurance Co. of America, 422 S.W.2d 617 (S.Ct., Mo. 1968); Hoboken Camera Center, Inc. v. Hartford Accident and Indemnity Co., 93 N.J.Super. 484, 226 A.2d 439 (1967); Tri-Motors Sales, Inc. v. Travelers Indemnity Co., 19 Wis.2d 99, 119 N.W.2d 327 (1963).

The Courts which have interpreted the proviso of Section 2(b) were required to do so because of a factual background which was similar in each of the above cases. In every case the insured had evidence, other than computations, of the factual existence of a loss due to employee dishonesty. This evidence was of varying types and included statements from employees who had been stealing goods, the apprehension of dishonest employees, or suspicious circumstances which clearly linked employees with unexplained losses. The evidence, however, generally did not reveal the amount which the insured considered the full amount of the loss. The insured then attempted to introduce computations to prove the full extent of the loss. As noted above, courts reached different conclusions concerning whether or not such computations could be used to support a claim pursuant to Section 2(b).

A review of the evidence offered by York in support of its claim shows that the instant case is clearly distinguishable from the above-cited cases. In support of its allegation that its loss was due to employee dishonesty, York avers that it can prove that only its employees could have taken roofing shingles. The roofing shingles are stored in bundles weighing approximately 80 pounds each. These bundles are placed on pallets (with a total weight of 3200 pounds) which are stored in a locked warehouse within the lumber yard which is surrounded by a high cyclone fence. York further states that a third person would be required to break several locks and utilize York's forklift truck in order to remove the pallets containing bundles of roofing shingles. There is not the slightest evidence, however, that any of these events have taken place.

York's theory of employee dishonesty is premised upon the assumption that roofing shingles have been removed from the lumber yard. Such removal constitutes the factual existence of the loss. York, however, has presented only its own computations as evidence that roofing shingles have been stolen.[3] Its allegations that only its employees had access to the roofing shingles and affidavits in support thereof merely attempt to exclude the possibility of theft by other individuals by creating a negative inference. Such evidence of employee dishonesty, however, presupposes the factual existence of the loss and adds nothing by which its existence can be proved. And the computations alone, even if accurate, are insufficient to prove the existence of the loss and support a claim under Section 2(b).

The instant case, then, clearly differs from the above-cited cases because York, unlike the other insureds, has not presented any evidence, other than its own self-created computations, in support of its claim. Without such other evidence the proviso of Section 2(b) cannot be invoked to abrogate the exclusion provision. Consequently, it is unnecessary to interpret the proviso and follow either line of cases. Indeed, in Hoboken Camera Center, Inc., *supra,* the New Jersey Superior Court recognized that it was necessary to accommodate both parties to a fidelity contract because an insurer includes Section 2(b)

---

3. In its Answers to Interrogatories York states that the factual existence of the loss is dependent only in part upon its computations. Other than evidence which tends to negate the possibility of theft by persons other than employees, York has not presented nor indicated that it can present additional evidence to support the existence of the loss.

in its fidelity bonds to insulate itself against claims based upon self-created records while the insured must often rely upon such records as the sole evidence of the extent of loss. The Court concluded that the proviso portion of Section 2(b) permitted the use of computations to prove the full amount of loss when there is "appreciable proof from other facts or circumstances of a loss caused by employee dishonesty" and as corroboration of independent proof of an employee-connected loss. Nonetheless, the Court realized that situations such as the instant case might arise and noted at 226 A.2d 448:

> "Such accommodation, in our judgment, should preclude recovery by the insureds under this bond if they had no proof whatever of an employee-connected loss other than inventory or profit and loss computations, no matter how reliable in the particular case."

York has failed to produce any independent evidence in support of its claim other than its own profit and loss computations. Since Section 2(b) clearly excludes from the coverage of the policy all claims which are supported solely by such evidence, York's claim, then, is excluded by the terms of its contract with Fidelity. Indeed, York's claim is precisely the kind of claim which Section 2(b) was designed to exclude.