595 A.2d 1302

**MOVIE DISTRIBUTORS LIQUIDATING TRUST, as Successor in Interest to VTR Movie Distributors, Appellee,**

v.

**RELIANCE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 6, 1991.

Decided Aug. 2, 1991.

Avrum Levicoff, Pittsburgh, for appellant.

Jan C. Swensen, Pittsburgh, for appellee.

Before OLSZEWSKI, HUDOCK and HOFFMAN, JJ.

HUDOCK, Judge:

This is an appeal from the judgment denying post-trial motions following a jury trial in which Appellee was awarded $67,500 in damages, plus pre-judgment interest, under a fidelity insurance policy written by Appellant. At the conclusion of the evidence, Appellant moved for a directed verdict, but the trial court denied the motion and submitted the case to the jury for its verdict. Timely post-trial motions were filed, requesting a judgment notwithstanding the verdict, and denied. Appellant then filed this appeal. We affirm.

The facts as summarized by the trial court are:

VTR was in the business of wholesaling videos releases to dealers for personal home video use. VTR purchased comprehensive dishonesty disappearance and destruction coverage from [Appellant], designed in part to cover against employee theft. The policy provided for up to $100,000 of coverage resulting from employee dishonesty and theft, with a $5,000.00 deductible. VTR ultimately determined that employee theft was in fact occurring at its Elmsford, New York warehouse. In January of 1986, VTR initiated its own investigation based on a tip received by the company. The fact of theft was ultimately confirmed when Paul Pasquarelli, William Pilossoph and others [executives of VTR] traveled from Pittsburgh to New York. On that trip, [they] visited an apartment leased by VTR and occupied by employee David Fabus. Found in that apartment were numerous video tapes, many of which were duplicates of the same title. Also found in the apartment were several VCR players. When confronted, Fabus ultimately admitted that he had been stealing the "hot" titles and reselling these. These tapes constituted VTR's inventory.

Patricia Murphy, another employee of VTR, also testified to having observed various employees stealing tapes. Murphy also saw boxes of tapes placed near the doors. These boxes were later missing. VTR filed a timely

proof of loss with [Appellant], who claimed they were not liable under the within policy.

[VTR] presented the expert testimony of Daniel Aizley, a certified public accountant who specialized in analyzing claims filed against insurance companies. Aizley testified that in his opinion, VTR's loss was well in excess of $105,000.00, based upon his analysis of documents presented to him by VTR.

[VTR] also called Alan Cohen, who was VTR's vice president of finance and administration at the time that the theft was discovered. Cohen testified at length concerning the steps taken to verify the amount of the loss, as well as the submission of the claim and proof of loss to [Appellant]. Cohen testified that numerous physical inventories were examined, with an emphasis on the "hot" titles that were released during the known time period of the thefts. Cohen, a certified public accountant, also testified to the gross profit levels at the company's various warehouses. The profit level for the New York warehouse during the period of the theft was significantly less than for the company's other branches.

(Trial Court Opinion at 2–4).

Appellant raises four issues in this appeal: (1) whether the testimony of Paul Pasquarelli concerning his conversation with employee David Fabus was inadmissible hearsay; (2) whether the trial court should have permitted Alan Cohen to be cross-examined about a lawsuit filed against VTR by W.R. Grace Co. (the company that ultimately purchased VTR); (3) whether the trial court correctly construed the clause in the insurance contract excluding proof of loss based on inventory or profit and loss computations; and (4) whether VTR is entitled to pre-judgment interest.

The standard we apply when reviewing the denial of a motion for directed verdict and motion for judgment n.o.v. is whether the trial court abused its discretion or committed an error of law which controlled the outcome of the case.

In ruling upon these motions, the trial judge must consider 'the evidence, together with all reasonable inferences

that may be drawn therefrom ... in the light most favorable to the verdict winner.' Accepting as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and rejecting all testimony and inferences to the contrary, the trial judge must grant said motions when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case.

*Timbrook v. Foremost Insurance Co.*, 324 Pa.Super. 384, 387, 471 A.2d 891, 892–93 (1984) (citation omitted).

We will take the issues in the order presented above. First, it is well-settled that whether evidence is admitted or excluded is within the discretion of the trial judge and will not be reversed absent a clear abuse of that discretion. *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984). Appellant argues that it was an abuse of discretion for the trial court to permit Paul Pasquarelli to testify concerning his conversation with David Fabus because that conversation constitutes hearsay and does not qualify as a statement against interest. Our Supreme Court recently discussed hearsay and the statement against interest exception in *Heddings v. Steele*, 514 Pa. 569, 526 A.2d 349 (1987):

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. A hearsay statement lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. Perhaps such a statement's most telling deficiency is it cannot be tested by cross-examination. According to Dean Wigmore, cross-examination is 'beyond any doubt the greatest legal engine ever invented for the discovery of truth.' 5 Wigmore, [Evidence] § 1367. Nor is the declarant under oath when the out-of-court statement is uttered. This court has long recognized the oath requirement as a further assurance of reliability. Out-of-court declarations also deprive the trier of fact of an opportunity to examine the demeanor of the declarant. Moreover, an in-court declarant may be impressed with the solemni-

ty of the proceeding and may be reluctant to lie in the face of the party against whom the statement is directed.

\* \* \* \* \* \*

Under the law of this Commonwealth, declarations against pecuniary or proprietary interest are admissible as a hearsay exception. Such statements are deemed reliable as '[p]eople are apt to speak freely and falsely in their own favor but are reluctant to speak falsely to their pecuniary or proprietary detriment.' This Court has recently abandoned the historical limitation to statements against one's pecuniary or proprietary interest to incorporate statements against one's penal interest.

*Id.*, 514 Pa. at 573, 574–75, 526 A.2d at 351, 352 (citations omitted). To qualify as a statement against interest, the party seeking to have the testimony admitted must show that the statement was against the declarant's penal interest at the time the statement was made, and the declarant must be unavailable at the time of trial. *Commonwealth v. Colon*, 461 Pa. 577, 582, 337 A.2d 554, 557 (1975). Applying this analysis to the present case, David Fabus was arrested and later released on bail after Pasquarelli posted his bond. Pasquarelli and Fabus went back to the Elmsford, New York warehouse and talked about the thefts. Fabus told Pasquarelli that he had been taking the tapes and selling them at below market price. Fabus spoke in detail about some of the movie titles taken and about the quantity taken. Pasquarelli testified that he was unable to locate Fabus to testify at trial, although he had made several attempts to locate Fabus. Pasquarelli and Fabus talked after Fabus was arrested but before Fabus was tried on the theft charges. Therefore, Fabus' confession to Pasquarelli, although it contained nothing which would subject Fabus to greater penalty than he was already facing by the charges, was made before any conviction, and would likely be evidence of guilt which could have been used against Fabus later. Fabus was unavailable to testify. We find that both elements of the statement against interest exception have been satisfied and it was proper for the trial court to permit

Pasquarelli to testify concerning his conversation with Fabus.

■ Secondly, Appellant argues that it was error for the trial court to refuse to permit Appellant to cross-examine witness Alan Cohen about a lawsuit filed against VTR by W.R. Grace Co., purchaser of VTR. The trial court stated in its opinion:

> The stated purpose of this line of questioning was to 'attack the credibility of the profit and loss evidence offered on direct ...' Defendant's Statement of Matters Complained of on Appeal at p. 4.
>
> The mere fact that VTR had been accused of fraudulent misrepresentation in a lawsuit that was ultimately settled does not make this a relevant fact with which to impeach the credibility of [VTR's] profit and loss evidence. This proffered line of questioning lacked any probative value whatsoever. Assuming that this evidence was even somewhat probative, we believe that the prejudice from this attempted line of questioning clearly outweighed any probative value. This line of questioning was also a collateral attempt at attacking credibility, and would have only served to raise other issues that could have confused the jury. It is unquestioned that a '... court may exclude evidence that is irrelevant, confusing, misleading, cumulative, or prejudicial.' *Concorde Investments, Inc. v. Gallagher*, 345 Pa.Super. 49, 497 A.2d 637, 641 (1985); *Martin v. Soblotney*, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983); *Lewis v. Mellor*, 259 Pa.Super. 509, 515, 393 A.2d 941, 944–45 (1978).

(Trial Court Opinion at 6–8). We agree that to permit this line of questioning would have been a collateral attack on credibility and could cause confusion for the jury by bringing in evidence irrelevant to the present case. Therefore, the trial court did not abuse its discretion on this issue.

■ Next, Appellant argues that the trial court incorrectly interpreted the insurance policy exclusion concerning proof of loss through the use of inventory or profit and loss computations. We were unable to find a decision by the

courts of the Commonwealth of Pennsylvania construing the particular language highlighted in this case. The language in the policy in question reads:

EXCLUSIONS

Section 2. This Policy does not apply:

(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, *either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation.*

\* \* \* \* \* \*

LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEES

Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted *reasonably proves* that the loss was in fact due to the fraud or dishonesty of one or more of said Employees, and provided further, that the aggregate liability of the Company for any such loss shall not exceed the limit of liability applicable to Insuring Agreement I.

\* \* \* \* \* \*

BOOKS AND RECORDS

Section 6. The insured shall keep records of all the Insured property in such manner that the *Company* can accurately determine therefrom the amount of loss.

(Complaint, Exhibit A, emphasis added). Appellant challenges the trial court's interpretation of these clauses, saying that the evidence of loss submitted by VTR consists of inventory and profit and loss computations which are specifically excluded as means of proving loss.

The interpretation of an insurance policy is, of course, a question of law for the court. Courts, however, cannot rewrite the terms of the policy or give them a construc-

tion in conflict with the accepted and plain meaning of the language used. When a word used in the exclusion under scrutiny is specifically defined in the definitions section of the policy, it is that definition which must control in determining the applicability of the exclusion. Any ambiguous terms must be given a construction most favorable to the insured; but '[a] provision of an insurance policy is ambiguous [only] if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning.'

*Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978) (citations omitted). Appellant argues that the plain language of the exclusion, underlined above, clearly excludes the use of inventory or profit and loss computations to establish the amount of the alleged loss sustained by VTR. Because we find that the terms "inventory and profit and loss computations" are ambiguous, we disagree. A 1971 Federal District Court decision for the Eastern District of Pennsylvania is instructive with regard to the clause in question. In *York Lumber Co. v. Fidelity and Deposit Company of Maryland*, 331 F.Supp. 1131 (E.D.Pa.1971) the court interpreted a clause very similar to the one in the present case. The court held that the clause was a standard exclusion provision incorporated into many fidelity bonds. In *York*, the plaintiff lumber yard noticed lumber missing and suspected employee theft. The plaintiff attempted to establish the loss as employee theft by proving that only employees had access to the area in question. The plaintiff there also used inventory and profit and loss computations to establish the loss. The court held that there have been two lines of cases which have arisen in the interpretation of this type of exclusion. One line of cases takes a very literal reading of the policy language and holds that "computations may be introduced in support of a claim only to corroborate other evidence which, standing alone, could prove both the existence and the full amount of the loss." *Id.* at 1132. The other line of cases takes a more broad reading of the

language in the policy and holds that "such computations may be introduced as the only available proof of the full amount of the loss when there is applicable proof from other facts or circumstances of employee dishonesty." *Id.* at 1132–33. The court in *York* held that because the plaintiff presented no evidence independent of the inventory and profit and loss computations to establish that a loss due to employee dishonesty took place, there could be no recovery under the policy. The court did not reach the interpretation of the policy language, however, because plaintiffs failed to first establish a loss independent of those computations. The court, in reaching its decision, used authority from other jurisdictions to distinguish its case. The court held that:

[i]n every case the insured had evidence, other than computations, of the factual existence of a loss due to employee dishonesty. This evidence was of varying types and included statements from employees who had been stealing goods, the apprehension of dishonest employees, or suspicious circumstances which clearly linked employees with unexplained losses. The evidence, however, generally did not reveal the amount which the insured considered the full amount of the loss.

*Id.* at 1133. The court cited the decision of the New Jersey Superior Court in *Hoboken Camera Center, Inc. v. Hartford Acc. & Ind. Co.*, 93 N.J.Super. 484, 226 A.2d 439 (1967), as one of the cases which permitted the use of inventory computations to establish the amount of loss when there was other independent evidence of employee dishonesty. *Hoboken* also involved construction of a similar policy exclusion. The New Jersey Court discussed at length the genesis of the policy language in question. The nature of the argument posed by parties in other decisions construing this language has been that to give the clause its plain meaning would render the protection purchased with the policy valueless. This occurs because, unless the thief is caught red-handed, there is no direct proof of the amount of loss. And if the thief is caught red-handed, there is no

loss because the goods would be recovered. In a high volume business where inventory is the stock in trade, the records kept by the business are its only ability to know at any given point in time of what that inventory consists. The court recognized that the interest of the insured in being protected from employee dishonesty, and the interest of the insurer against unreliable proof of loss must be weighed. The Court held that to accommodate both interests it should:

> preclude recovery by the insureds under this bond if they had no proof whatever of an employee-connected loss other than inventory or profit and loss computations, no matter how reliable in the particular case. On the other hand, inventory records may by their nature constitute inherently indispensable proof of an allowable claim under a fidelity bond in one or the other or both of two respects: (a) as the only available proof of the full amount of a loss, there being some appreciable proof from other facts or circumstances of a loss caused by employee-dishonesty; (b) as corroboration sufficient to make a case for the factfinder of the fact of an employee-connected loss where independent proof thereof, considered alone, might be insubstantial. To deny an insured the right to adduce proof of inventory records for either of these purposes might in a particular case defeat justice by precluding recovery on a meritorious claim by use of the only proofs reasonably available to the insured and probative thereof.

*Id.* at 499–500, 226 A.2d at 448.

We agree that the use of inventory or profit and loss computations when there is independent evidence of the existence of a loss due to employee dishonesty serves the interests of both the insured and the insurer, and hold that this is the proper interpretation of the clause in our present case. The trial judge in his charge to the jury expressed this interpretation as well:

> A provision of the insurance contract excludes from coverage losses that are proven by inventory computation or

a profit and loss computation. Now, this provision means that the plaintiff may not recover if its claim is based entirely upon an inventory or a profit and loss computation. If, however, some evidence independent of these items exists to support plaintiff's claim, then plaintiff's claim is not automatically excludable under the contract. Inventory information computation, and profit and loss computation may be considered to substantiate plaintiff's claim when independent evidence of the theft has been presented.

In considering the inventory and profit lost [sic] computations offered by the plaintiff, you should bear in mind that they are only entitled to weight in plaintiff's claim if after considering all the evidence you reasonably conclude that the inventory shortages appearing in the computation were caused by employee theft. A fidelity bond provision requiring an itemized proof of claim must be construed reasonably and a proof of claim is sufficient if it is itemized to an extent reasonably possible under the circumstances and enables the insured to ascertain the nature of the different items upon which the claim is based.

(N.T. at 749–51). Applying this analysis to the present case, there is undisputed evidence of the theft of tapes by employees from VTR. Therefore, under the construction adopted by this Court today, VTR is permitted to establish the amount of that loss through the use of inventory and profit and loss computations. Therefore, the trial court correctly interpreted this policy language when it permitted the use of inventory and profit and loss computations.

■ Finally, Appellant argues that it was error for the trial court to permit pre-judgment interest to be awarded in this case. It has long been the law of this Commonwealth that:

[i]n all cases of contract, interest is allowable at the legal rate from the time payment is withheld after it has become the duty of the debtor to make such payment; allowance of such interest does not depend upon discre-

tion but is a legal right. It is a right which arises upon breach or discontinuance of the contract provided the damages are then ascertainable by computation and even though a bona fide dispute exists as to the amount of the indebtedness.

*Palmgreen v. Palmer's Garage,* 383 Pa. 105, 108, 117 A.2d 721, 722 (1955). As we held in *Oxford Manufacturing Co. Inc. v. Cliff House Building Corp.,* 224 Pa.Super. 387, 307 A.2d 343 (1973):

the fact that the jury reduced this amount does not transform what was a liquidated sum into an unliquidated one on which interest did not accrue.

*Id.,* 224 Pa.Superior Ct. at 389, 307 A.2d at 345.

Our present case relates to a contract of insurance containing policy limits of $100,000 for employee theft. The fact that the jury reduced that amount of damages to $67,500 does not make this claim an unliquidated one. We therefore find that the trial court correctly awarded prejudgment interest on the $67,500 jury verdict.

Judgment affirmed.