**Kelly v. Montgomery**

2

*Nancy H. Fullam,* for plaintiff.
*James A. Young,* for defendant, Bryn Mawr Hospital.
*Nancy Nolan,* for defendant Anesthesia Associates.
*Kevin Wright,* for defendant Bruce Montgomery, M.D.

SALUS, *J.,* December 21, 1994—This appeal is made in response to the court's order of August 22, 1994, granting in part and denying in part plaintiffs' motion for post-trial relief. Plaintiffs were granted a new trial against defendant, Bryn Mawr Hospital, only on the issues of liability and damages suffered by the minor, Lauren Tiburzio. The motion was denied in all other respects. Plaintiffs raise no fewer than 35 points of appeal in their concise statement of matters complained of, arguing precisely the same 35 points contained in

their motion for post-trial relief. Plaintiffs' central arguments are addressed below.

## PROCEDURAL AND FACTUAL HISTORY

This case is a medical malpractice action brought by plaintiffs Marcia Tiburzio Kelly and Francis Tiburzio, individually and on behalf of their minor daughter Lauren, against defendants Bryn Mawr Hospital, Anesthesia Associates of Bryn Mawr, and Bruce Montgomery, M.D. The action arises from the birth of Lauren Tiburzio on July 21, 1983 at Bryn Mawr Hospital. Complications arose in the birthing process, and the attending obstetrician, Dr. Montgomery, decided to perform a Caesarean section. Dr. Montgomery requested an anesthesiologist for the procedure, but the first-call anesthesiologist had been called into surgery. Confusion and miscommunication ensued, and the second-call anesthesiologist was not contacted for approximately 30 minutes. Dr. Montgomery, after waiting several minutes, decided to proceed with the Caesarean section under local anesthesia, and Lauren Tiburzio was born a short time thereafter.

Plaintiffs pursued two separate claims at trial before the court. Marcia Tiburzio-Kelly's claim was based upon her undergoing a Caesarean section under local anesthesia. The second claim, on behalf of Lauren Tiburzio, alleged that Lauren had an asphyxic insult at birth that was worsened by the delay in performing the Caesarean section, attributable to the delay in the arrival of the anesthesiologist and failure to properly monitor Lauren's heart rate during labor and delivery.

At the conclusion of the 12 day trial, a jury determined that Bryn Mawr Hospital was negligent with regard to its treatment of both Lauren Tiburzio and Marcia Tiburzio-Kelly. The jury awarded Marcia Tiburzio-

Kelly $25,000 on her claim against the hospital, but was unable to reach a determination on the issue of causation with respect to Lauren Tiburzio. The jury found no negligence on the part of either Dr. Montgomery or Anesthesia Associates. The court recorded the appropriate verdict, and plaintiffs filed a motion for post-trial relief, seeking "a new trial on all issues as to all parties." Plaintiff's brief at 5. The court granted the motion only with respect to the issue of causation regarding Lauren Tiburzio's claim against Bryn Mawr Hospital. This appeal followed.

## DISCUSSION

Plaintiffs raise 35 points of appeal in their concise statement of matters complained of, most dealing with the court's rulings on evidentiary matters. In considering the burden such an appeal places upon the limited resources of the judicial system, the court recalls the words of the Honorable Ruggero J. Aldisert, then of the United States Court of Appeals for the Third Circuit.

"When I read an appellant's brief that contains 10 or 12 points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebutable presumption, but is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness." *United States v. Hart,* 693 F.2d 286, 287 n.1 (3d Cir. 1982). (citations omitted)

Although constraints of time and resource preclude an exhaustive treatment of each issue, plaintiffs' central arguments are addressed below.

The decision to deny a motion for a new trial is within the sound discretion of the trial court. *Graham v. Sky Haven Coal Inc.,* 386 Pa. Super. 598, 604, 563 A.2d 891, 894 (1989). A trial court is required to grant

a new trial only where the court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice. *Austin v. Ridge,* 435 Pa. 1, 4, 255 A.2d 123, 124-25 (1969). The standard of review is whether the trial court palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Westinghouse Elevator Co. v. Herron,* 514 Pa. 252, 256, 523 A.2d 723, 725 (1987).

Many of plaintiffs' points of appeal concern the preclusion of evidence at trial. Generally, matters related to the admission of testimony are entrusted to the sound discretion of the trial court. *Pascale v. Hechinger Co. of Pa.,* 426 Pa. Super. 426, 435, 627 A.2d 750, 754 (1993). The erroneous exclusion of evidence is grounds for a new trial only where the error is both material and prejudicial. *Eldridge v. Melcher,* 226 Pa. Super. 381, 387-88, 313 A.2d 750, 754 (1973).

Plaintiffs first contend, in points 1 and 2 of their concise statement, that the court improperly restricted the testimony of plaintiffs' expert witness and thereby wrongfully limited the scope of plaintiffs' case against defendant Anesthesia Associates of Bryn Mawr Inc. to vicarious liability for the acts of two individual anesthesiologists. Plaintiffs' contention stems from the court's granting of defendants' motion in limine to preclude evidence of primary liability on the part of Anesthesia Associates. The court's ruling was based on the fact that plaintiffs' proposed expert testimony did not include any primary theory of liability against Anesthesia Associates: "The opinions offered here and statements made in my reports of February 7 and April 2, 1990 regarding such practices and policies for anesthesia coverage at Bryn Mawr ... constitute departures from the accepted standards of anesthetic medical care

by the hospital, first call anesthesiologists and nursing staff." (June 1, 1990 Report of Dr. Richard Raker.)

While Dr. Raker's written report clearly implicated the first call anesthesiologist, and thus, vicariously, Anesthesia Associates, the court determined that allowing Dr. Raker to attack Anesthesia Associates directly at trial would go beyond the fair scope of his written reports, as prohibited by Rule 4003.5, Pa.R.C.P., and would unfairly prejudice defendants. Pa.R.C.P. 4003.5(i). Because plaintiffs offered no expert reports indicating negligence on the part of Anesthesia Associates, other than vicariously through the actions of the individual anesthesiologists, the court properly ruled to preclude such testimony at trial. Furthermore, the court construed its ruling liberally, in favor of the plaintiffs, and permitted Dr. Raker to criticize the anesthesiology service provided at Bryn Mawr. (7/13/93 N.T. at 409-426.) Plaintiffs' contention that the court improperly limited the scope of plaintiffs' case is thus without merit.

In point 3, plaintiffs contend that the court erred in limiting the scope of the expert testimony of Dr. David Massari, a psychologist specializing in clinical neuropsychology. Specifically, plaintiffs argue that the court improperly precluded Dr. Massari from testifying regarding the causal relationship between asphyxia and brain injury. Plaintiffs' argument has no merit, however, in that Dr. Massari's opinion that Lauren Tiburzio's brain injury was consistent with asphyxia was unqualified and not set forth in any of his three expert reports. Two of Dr. Massari's reports are evaluations of Lauren's current cognitive, perceptual and motor abilities; the other is an estimate of the costs of providing Lauren with required services until age 21. Plainly, testimony by Dr. Massari regarding the cause of Lauren's condition

would go beyond the fair scope of these reports and prejudice defendants.

In point 4, plaintiffs contend that the court improperly precluded the expert testimony of Dr. Stanley M. Warner regarding the specific time requirements for commencing emergency Caesarean sections. In Dr. Warner's expert reports, he stated generally that in his opinion Dr. Montgomery waited too long to perform the Caesarean section. At trial, the court properly precluded Dr. Warner from opining upon the specific number of minutes required to prepare for a Caesarean section when there was no such opinion set forth in his expert reports. Dr. Warner was not prohibited from testifying that Dr. Montgomery has breached the standard of care in delaying the performance of the procedure. (7/14/93 N.T. at 604.) Furthermore, plaintiffs were in no way prejudiced by such ruling in that Dr. Warner was able to testify to the same information, the specific number of minutes required to prepare for a Caesarean section, during cross-examination. (7/14/93 N.T. at 604.)

Plaintiffs contend in point 5 that the court improperly permitted defense expert Dr. Henry Rosenberg to estimate the time for performance of a Caesarean section and precluded plaintiffs from cross-examining Dr. Rosenberg on such time estimate. Although Dr. Rosenberg was qualified as an anesthesiologist, the court determined that it was within Dr. Rosenberg's knowledge and experience to testify as to the average amount of time required to perform a Caesarean section—three to four minutes. (7/19/93 N.T. at 1189-90.) The court properly restricted plaintiffs' cross-examination of Dr. Rosenberg where such cross-examination would have served only to mislead the jury and waste time. *Commonwealth v. Green,* 290 Pa. Super. 76, 84-85, 434 A.2d 137, 141 (1981). Thus, where plaintiffs' counsel

attempted to impeach Dr. Rosenberg with the prior, much shorter time estimate of Dr. Mull, the court correctly precluded such questioning on the ground that Dr. Mull's estimate presupposed that all of the essential equipment was already set up, whereas Dr. Rosenberg's estimate did not. (7/9/93 N.T. at 266-67.)

In point 6, plaintiffs contend that the court improperly precluded plaintiffs' experts from referring to various outside sources in their testimony. Such testimony was properly precluded on the basis of hearsay. In the case of plaintiffs' auditory and speech pathology expert, Maxine Young, the court precluded only that testimony regarding causation. (7/15/93 N.T. at 764-73.) Such ruling was proper as Ms. Young attempted to cite unconfirmed statements not attributable to any specific source, and the topic of causation was plainly beyond Ms. Young's own expertise. Furthermore, plaintiffs were not prejudiced by such rulings, as much of the hearsay testimony derived from other witnesses called by plaintiffs over the course of the trial.

In point 7, plaintiffs complain that their experts were precluded from referring to Lauren Tiburzio's diagnosis for either mild cerebral palsy or left hemiparesis. The record demonstrates that such references were properly precluded as hearsay and as attempts to convey this diagnosis through conduits of lay experts and treating physicians. See *Primavera v. Celotex Corporation,* 415 Pa. Super. 41, 52, 608 A.2d 515, 521 (1992).

In point 8, plaintiffs argue that improper limitations were placed upon the testimony of their pediatric neurology expert, Dr. Ruth Deborah Nass. (7/15/93 N.T. at 708-21.) The record demonstrates that Dr. Nass was limited in her testimony only when such testimony went beyond the scope of her reports or where Dr. Nass

was merely acting as a conduit for the opinions of others. *Id.*

In point 9, plaintiffs contend that the court wrongly permitted cross-examination of plaintiffs' expert Dr. Schechter on the timing of the asphyxic insult to Lauren Tiburzio's brain. The court properly concluded that such cross-examination was within the scope of Dr. Schechter's direct testimony. Although not qualified to offer an opinion regarding causation, Dr. Schechter nevertheless testified on direct: "They [Lauren Tiburzio's injuries] are causally related to the whole birth process. The difficulties with meconium staining, the fetal distress that she sustained and the subsequent seizure disorder that's been identified." (7/14/93 N.T. at 491.) The court found the cross-examination of Dr. Schechter to be within the scope of his direct testimony, and thus properly allowed it.

In point 10, plaintiffs allege generally that the court improperly restricted the use of hypothetical questions "by plaintiffs' counsel only." The implication of bias on the part of the court is absurd. When any hypotheticals were excluded, it was because they were not based on matters of record or on facts warranted by the evidence. *Commonwealth v. Anderson,* 381 Pa. Super. 1, 12-13, 552 A.2d 1064, 1070, (1988), *app. denied,* 524 Pa. 616, 571 A.2d 374 (1989).

In point 11, plaintiffs complain that the court improperly precluded Dr. Nass from referring to various authoritative studies or literature on redirect examination. The scope of redirect examination, however, is limited to answering only such matters as were drawn out in the preceding cross-examination. *Catina v. Maree,* 498 Pa. 443, 449, 447 A.2d 228, 231-32 (1982). The court properly concluded that allowing Dr. Nass to refer to supportive studies and literature on redirect exami-

nation would be improper where defendants did not approach this area on cross-examination. (7/15/93 N.T. at 725-42.)

In point 12, plaintiffs contend that the court permitted the improper use and display of material from medical literature in defendants' cross-examination of Dr. Warner. Specifically, plaintiffs object to enlargements of medical literature displayed during cross-examination. The court allowed the display of such enlargements contemporaneously with cross-examination, but did not allow them into evidence, because such visual assistance would be helpful to the jury. Dr. Warner was familiar with the materials and their use was proper for purposes of impeachment.

In point 13, plaintiffs complain that the court placed improper restrictions on plaintiffs' use of learned treatises. The court properly restricted the cross-examination of defendant Dr. Montgomery, a fact witness, on the contents of a medical text with which he was not familiar and which was not demonstrated to be authoritative. See *Majdic v. Cincinnati Machine Co.,* 370 Pa. Super. 611, 621-22, 537 A.2d 334, 339-40 (1988).

In point 14, plaintiffs cite as erroneous the court's "[r]efusal to permit cross-examination of any defense expert to establish the limited scope of opinion being offered without being deemed to open the door to the rendering of other opinions outside the scope of expert reports." Plaintiffs are, in sum, arguing that they were prejudiced because they were not able to question witnesses as to what they had not said. Such questioning was properly precluded as cumulative and irrelevant.

In point 15, plaintiffs contend that the court improperly precluded cross-examination of defendants' expert witnesses as to their prior representation by defense counsel and defendant's law firm. Such preclusion is

entirely appropriate where, as here, the evidence is irrelevant and highly prejudicial. *Movie Distributors Liquidating Trust v. Reliance Insurance Co.,* 407 Pa. Super. 588, 594, 595 A.2d 1302, 1305 (1991), *app. denied,* 529 Pa. 658, 604 A.2d 249 (1992).

In point 16, plaintiffs contend that the court erred in permitting defendants to cross-examine Dr. Warner on income earned as an expert witness in 1990. Plaintiffs, however, opened the door for such questioning on direct examination when plaintiffs elicited testimony from Dr. Warner to the effect that he did not personally profit from testifying as an expert witness. (7/14/93 N.T. at 560-61.) In fact, Dr. Warner earned a substantial sum from reviewing this and other cases in 1990, and defendants were entitled to probe this area on cross-examination. The facts in this instance are thus distinguishable from those in *Mohn v. Hahnemann Medical College and Hospital,* 357 Pa. Super. 173, 178-79, 515 A.2d 920, 923 (1986).

In point 17, plaintiffs complain that the court improperly questioned plaintiffs' expert witnesses. The record demonstrates that the court did not act improperly, but rather questioned witnesses only "to clarify existing facts and elicit new information when necessary." *Sweeney v. PennDOT,* 120 Pa. Commw. 591, 595, 549 A.2d 1001, 1003 (1988). (citations omitted) Furthermore, plaintiffs failed to properly preserve such matters for appeal. (See 7/12/93 N.T. 218-20, 7/16/93 N.T. at 895-98.)

In point 18, plaintiffs aver that the court improperly dismissed Francis Tiburzio's claim for loss of consortium. Loss of consortium refers to a right deriving from the marriage relationship that is grounded on the loss of a spouse's services after injury. *Sprague v. Kaplan,* 392 Pa. Super. 257, 258-59, 572 A.2d 789, 790-91

(1990). No Pennsylvania court has ever recognized a cause of action for loss of consortium where the loss of spousal services is caused by the reaction of the non-injured spouse to the mental or physical injuries of the injured spouse. In this case, Francis Tiburzio testified: "I did not want to go through that again. I wouldn't have sex with my wife, because I was afraid and I couldn't take it anymore." (7/16/93 N.T. at 946-47.) Clearly, any loss of spousal services was caused not by any injury or unwillingness on the part of Marcia Tiburzio-Kelly, but rather by Francis Tiburzio's reaction to his wife's injuries. Plaintiffs' contention is thus without merit.

In point 19, plaintiffs contend that the court improperly dismissed Francis Tiburzio's cause of action for infliction of emotional distress. To establish a claim for negligent infliction of emotional distress, a plaintiff must demonstrate that he (1) was near the scene of the accident, (2) was closely related to the victim, and (3) suffered a direct emotional impact from the sensory and contemporaneous observance of the accident. *Sinn v. Burd,* 486 Pa. 146, 170-71, 404 A.2d 672, 685 (1979). Pennsylvania courts have upheld claims for negligent infliction of emotional distress where sensory perception of the accident involved visual observation of events leading up to the accident and audio perception of the accident itself. See *e.g., Bloom v. DuBois Regional Medical Center,* 409 Pa. Super. 83, 103 n.10, 597 A.2d 671, 681 n.10 (1991). Pennsylvania courts have never, however, upheld such a claim where, as here, plaintiff had no visual observation whatsoever of the accident or the events immediately preceding the accident. The court properly declined to extend this well-established doctrine.

In point 20, plaintiffs contend that the court improperly precluded Marcia Tiburzio-Kelly's damage claims

for loss of life's pleasures, embarrassment and humiliation, and future pain and suffering. The record demonstrates that plaintiffs failed to support such claims with evidence sufficient to submit the claims to the jury. Plaintiffs presented no evidence demonstrating loss of life's pleasures as a result of Marcia Tiburzio-Kelly's undergoing a Caesarean section under local anesthesia. Plaintiffs failed to allege that Marcia Tiburzio-Kelly's embarrassment or humiliation arose from any disfigurement or limitations on her normal activities stemming from her undergoing a Caesarean section under local anesthesia, as is necessary to recover for such claim. *Fish v. Gosnell,* 316 Pa. Super. 565, 582-83, 463 A.2d 1042, 1051 (1983). Finally, plaintiffs presented no evidence of pain and suffering resulting from the absence of proper anesthesia beyond the performance of the procedure itself. The court thus charged that Mrs. Tiburzio-Kelly could recover for pain and suffering up until the time of the verdict, but not for any future pain and suffering.

In point 21, plaintiffs complain that the court refused to allow Marcia Tiburzio-Kelly or Francis Tiburzio to testify to any information they gained from various physicians caring for Lauren Tiburzio. The record demonstrates that such testimony was offered for the truth of the matter asserted and was properly excluded as hearsay. (7/16/93 N.T. at 939, 997-1007, 1017-18.)

In point 22 plaintiffs contend that the court improperly limited plaintiffs' use of deposition testimony of medical witnesses who were party defendants or agents of party defendants. The record demonstrates that such deposition testimony was properly precluded on the grounds of relevance and as an attempt to impeach on a collateral matter, and that plaintiffs were in no way prejudiced by such rulings. (See *e.g.,* 7/9/93 N.T. at 177-78.)

14

In point 23, plaintiffs contend that the court erroneously precluded plaintiffs from using the deposition testimony of Carol Kime during re-direct examination of Dr. Schechter. Because said deposition had not been used during cross-examination, and as Dr. Schechter stated that he had never before seen the deposition and did not rely on it in rendering his opinion, the court properly precluded plaintiffs from having Dr. Schechter read from Carol Kime's deposition.

In point 24, plaintiffs argue that the court improperly refused to allow plaintiffs' counsel to examine Dr. Robert L. Stavis as a hostile witness. Such a determination is within the discretion of the trial court. *Gaul v. Consolidated Rail Corporation,* 383 Pa. Super. 250, 254 n.1, 556 A.2d 892, 893 n.1 (1989), *app. denied,* 524 Pa. 621, 571 A.2d 383 (1989). Before a party can examine a witness "as on cross," the party must establish that the witness had a legal interest adverse to the party. 42 Pa.C.S. §5935. Furthermore, the court must consider whether the witness' testimony was unexpected, contradictory and harmful to the party calling the witness and beneficial to the opposing side. *Commonwealth v. Waller,* 498 Pa. 33, 38-39, 444 A.2d 653, 655 (1982). Because Dr. Stavis did not possess an adverse legal interest and the other considerations were not satisfied, the court properly refused to allow plaintiffs to treat Dr. Stavis as a hostile witness.

In point 25 plaintiffs contend that the court improperly allowed cross-examination of witnesses by defense counsel eliciting comparisons of Lauren Tiburzio to other children with disabilities. The court properly ruled that such testimony was relevant to determine whether Lauren Tiburzio required a specialized program, or whether existing programs were adequate to deal with her needs. (7/13/93 N.T. at 339-40.)

In point 26, plaintiffs claim that the court improperly refused to preclude the testimony of Nurse Ramsey. The late identification of Nurse Ramsey by defendants does not automatically preclude her testimony where, on balance, there is minimal surprise or prejudice to the opposing party. See *Leaphart v. Whiting Corporation,* 387 Pa. Super. 253, 266-67, 564 A.2d 165, 172 (1989), *app. denied,* 525 Pa. 619, 577 A.2d 890 (1990). Nurse Ramsey's testimony was properly allowed.

In point 27, plaintiffs contend that the court erroneously refused to preclude the testimony of Dr. John Manni. The court properly permitted Dr. Manni, who was identified as an expert witness several days before trial, to testify because of the importance of this testimony and the curable nature of any prejudice to plaintiffs. See *Feingold v. SEPTA,* 512 Pa. 567, 574, 517 A.2d 1270, 1273 (1986).

In point 28, plaintiffs argue that the court erroneously refused to admit exhibit P2 into evidence. Exhibit P2 consisted of a short, typewritten summary of events on the night of Lauren Tiburzio's delivery. The court excluded the summary as hearsay inasmuch as it did not qualify as a business record or admission. The Uniform Business Records as Evidence Act requires, for a business record to be admissible, that an unqualified witness authenticate the record, that the record be made in the regular course of business activity, that the record be made near the time of the event, and that the record be otherwise trustworthy. See 42 Pa.C.S. §6108(b). In this case, the summary in question was prepared by persons unknown from notes taken by Nurse Jean Mynaugh on the night of Lauren Tiburzio's delivery. Nurse Mynaugh's testimony makes clear that she took such notes only upon the occurrence of unusual events and not by direction of the hospital. (7/7/93 N.T. at 67,

130.) Incident reports of this nature are not considered business records. See *Neuman v. Pittsburgh Railways Co.*, 392 Pa. 640, 641-42, 141 A.2d 581, 582 (1958). Furthermore, the summary cannot qualify as an admission, as there is no evidence that Nurse Mynaugh had the authority to speak for any of the parties. Exhibit P2 was thus properly excluded.

In point 29, plaintiffs contend that the court improperly refused to admit exhibit P25 into evidence. Exhibit P25, an investigation report prepared by the independent ASCAP service, was properly excluded as hearsay. See *Ellis v. Commonwealth of Pa. Unemployment Compensation Board of Review*, 56 Pa. Commw. 628, 631-33, 425 A.2d 496, 498-99 (1981). The report is similarly inadmissible as an admission or as a past recollection recorded.

In point 30, plaintiffs contend that the court erroneously refused to give an adverse inference charge with respect to defendant hospital's failure to produce various documents. A party seeking an adverse inference charge must produce a persuasive quantum of competent evidence that the evidence in question actually exists. *Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 424-25, 219 A.2d 666, 669-70 (1966). Plaintiffs failed to meet this burden with respect to the requested cord blood sample and incident report. Furthermore, even if the burden is met, an adverse inference charge is not warranted where the non-producing party sufficiently explains its failure to offer the evidence. See *Morganstein v. House*, 377 Pa. Super. 512, 520, 547 A.2d 1180, 1184 (1988). Sufficient explanations were provided for the absence of the requested nursing protocols and Nurse Mynaugh's notes.

In point 31, plaintiffs contend that the court improperly ruled that nurses on duty at the hospital could

not be found to have acted as dual agents of the hospital and co-defendants. Where nurses perform routine hospital services, there is no liability on the part of physicians for the nurses' actions. *Muller v. Likoff,* 225 Pa. Super. 111, 113-14, 310 A.2d 303, 303-05 (1973). Here, the nurses did nothing more than perform the routine task of following a doctor's instructions to summon additional help. Certainly this is not enough to render the nurses agents of the doctor.

In point 32, plaintiffs argue that the court improperly ruled that the hospital could not be found liable for operation of the anesthesia service. This matter is rendered moot as the jury found no negligence on the part of the anesthesia service, Anesthesia Associates.

In point 33, plaintiffs contend that the court erroneously refused to permit the use of cross-claims to impeach defendants. A trial court has discretion to exclude such information where the probative value of the offer is outweighed by the risk of substantial prejudice or of misleading the jury. *Daset Mining Corporation v. Industrial Fuels Corporation,* 326 Pa. Super. 14, 22, 473 A.2d 584, 588 (1984). The court properly determined that this issue posed the danger of confusion and undue prejudice, and thus rightly ruled that it would not inform the jury of the cross-claim until the time of the jury charge. (7/9/93 N.T. at 271-76.)

In point 34, plaintiffs contend that the court improperly interrupted the jury charge and read defendants' points for charge. The jury charge was interrupted for a bomb-scare drill, and the court allowed the jury to break for lunch. (7/21/93 N.T. at 1585.) After the drill, the jury returned to the courtroom. The court then read defendants' points for charge, as the court had completed reading plaintiffs' points for charge prior to the drill. The record demonstrates that defendants' points for

18

charge were accurate statements of applicable law, were not redundant, and that the court acted properly in reading such charges to the jury.

In point 35, plaintiffs argue that judgment notwithstanding the verdict should be entered on behalf of Lauren Tiburzio on the issue of causation. The jury was hung on this issue, and the court declared a mistrial with respect to this element. The remedy of judgment n.o.v. is a drastic one, and the court should not overturn the findings of the jury "absent a showing that the verdict is capricious, against the weight of the evidence and resulted in a miscarriage of justice." *Gajkowski v. International Brotherhood of Teamsters,* 515 Pa. 516, 531, 530 A.2d 853, 860 (1987), *cert. denied,* 490 U.S. 1022 (1989). The record clearly demonstrates that reasonable minds could differ as to whether the injuries to Lauren Tiburzio were caused by the negligence of defendant hospital, and the court therefore properly refused to grant judgment notwithstanding the verdict.

For the foregoing reasons, the order of this court should be affirmed.