486

483 A.2d 556

SODA RENTAL SERVICE, INC.

v.

Nicola FORD and Doris Ford, his wife, and The Palace, Inc., and Richard Simpson and Sharon Simpson, Appellants.

Superior Court of Pennsylvania.

Argued March 20, 1984.

Filed Oct. 19, 1984.

Petition for Allowance of Appeal Denied March 21, 1985.

488

Clarence D. Bell, Jr., Media, for appellants.

Arthur W. Lefco, Philadelphia, for appellee.

Before SPAETH, President Judge, and BECK and TAMILIA, JJ.

SPAETH, President Judge:

This is an appeal from a final decree in equity, declaring a conveyance of real estate and a satisfaction of a mortgage fraudulent under section 4 of the Uniform Fraudulent Conveyance Act, 39 P.S. § 354, and granting ancillary relief. We affirm.

The case was heard by the trial court in February and April 1981, and a decree nisi was entered on November 11, 1981. Exceptions were dismissed, and on August 30, 1982, a final decree was entered. The facts as found by the trial court are as follows.

Soda Rental Service, Inc., the plaintiff below and appellee here, is a corporation engaged in the business of leasing soda dispensing equipment. The defendants below and appellants here are The Palace, Inc., a corporation with its former place of business at 1436 Chester Pike, Crum Lynne, Pennsylvania; Nicola Ford, and his wife, Doris Ford; Sharon Simpson, the Fords' daughter, and Richard Simpson, her husband.

On or about January 17, 1974, Soda Rental and Palace entered into a written lease for the installation and rental of soda dispensing equipment at Palace's place of business at 1436 Chester Pike. Under the lease, Palace was obligated to return the equipment or its value. On October 13, 1974, a fire destroyed the business premises. Soda Rental submitted several bills to Palace, in care of Nicola Ford, for the value of its equipment destroyed in the fire. The bills were not paid, and on May 22, 1975, Soda Rental, acting under the lease, entered judgment by confession against Palace in the amount of $6,930.96.

Meanwhile, the two conveyances here at issue had occurred. On or about March 14, 1975, Palace had received $200,000 [1] in insurance proceeds on account of the fire. The proceeds were turned over to Aetna Federal Savings & Loan Association, the mortgage holder on the property at 1436 Chester Pike. Aetna made disbursements of the proceeds, including paying a mortgage it held on the property at 66 South Rolling Road, which was owned by the Fords and used as their personal residence. Palace received no consideration for this payment. In addition, on or about April 3, 1975, Palace conveyed the property at 1436 Chester Pike to the Fords and the Simpsons. The deed recited consideration of $20,000, but no funds were exchanged. Richard Simpson had performed services for Palace prior to the fire, for which he expected to receive an ownership interest in Palace at some time in the future.

On the basis of these findings, the trial court concluded that the satisfaction of the mortgage on 66 South Rolling Road and the conveyance of the property at 1436 Chester Pike were fraudulent conveyances under section 4 of the Uniform Fraudulent Conveyance Act, 39 P.S. § 354, which provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

The trial court reasoned that Soda Rental had proved that the conveyances were made, and that when they were made, it was a creditor of Palace; that with this proof, the burden shifted to Palace, the Fords and the Simpsons to prove either that the conveyances were made for fair consideration or that Palace was not then insolvent or rendered insolvent by the conveyances, *see First National Bank of Marietta v. Hoffines*, 429 Pa. 109, 239 A.2d 458 (1968);

---

1. The record reveals that the payment was actually $190,000. N.T. April 15, 1981, 70. This discrepancy, however, has not been raised as error by appellants.

*Patterson v. Hopkins,* 247 Pa.Super. 163, 371 A.2d 1378 (1977); and that this burden had not been met.

The trial court's decree declared Palace's conveyance of the property at 1436 Chester Pike null and void, and directed the Fords and Simpsons to reconvey the property to Palace; the court imposed an equitable lien in favor of Soda Rental in the amount of $6,930.96 on the property at 66 South Rolling Road; and finally, the court enjoined Palace, the Fords and the Simpsons from encumbering or conveying either of the properties.

–1–

■ As appellants, Palace, the Fords and the Simpsons argue that the trial court erred in finding that Palace was insolvent at the time of the conveyances. The statement of this argument is misleading, however, for as just indicated, the trial court did not find that Palace was insolvent, but rather it concluded that appellants had not met their burden of proving that Palace was not insolvent. *See* Trial Court Conclusion of Law 7; Trial Court Opinion at 7–8.

We need not decide whether the trial court was correct in its allocation of the burden of proof, for appellants do not challenge the allocation.[2] Instead, they argue that the evidence proved that in fact Palace was not insolvent. In support of this argument, appellants say that Palace received $200,000 in insurance proceeds and that at the time of the conveyances Palace had a valid liquor license. Appellants further say that after disbursement of the insurance proceeds to Palace's creditors, over $14,000 in proceeds remained available to Palace, in addition to the value of the liquor license. However, the record reveals that the remaining proceeds were actually closer to $4,000. *See supra* n. 1. Moreover, appellants introduced no evidence to show either the value of the liquor license or that Palace had no creditors other than Soda Rental and those creditors that

2. This allocation of the burden of proof has been applied most often in cases where the transfer at issue was made between related parties. The transfers here at issue were arguably made between related parties. Moreover, this allocation of the burden of proof has never expressly been restricted only to cases involving transfers between related parties. *See United States v. Gleneagles Investment Co., Inc.,* 565 F.Supp. 556 (M.D.Pa.1983).

were paid from the insurance proceeds. The trial court therefore did not err in concluding that appellants failed to meet their burden on this issue.

–2–

Appellants argue that the trial court erred in finding that Palace did not receive fair consideration for the conveyances. Section 3(a) of the Uniform Fraudulent Conveyance Act, 39 P.S. § 353(a), provides that fair consideration is given for property when "in exchange for such property . . ., as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied." Appellants' argument is essentially that the conveyances were made to satisfy antecedent debts.

■ With respect to the satisfaction of the mortgage on 66 South Rolling Road, appellants argue that although the property was owned by the Fords, the proceeds of the loan were used to benefit Palace. However, there was no evidence of this. The testimony showed that the mortgage was taken out by the Fords and there was no indication of how the Fords used the money. See N.T. April 15, 1981, 86–87. The only witness to testify on this subject was Elizabeth Milacsky, and she was not able to say for what purpose the money secured by the mortgage was borrowed. See id. at 94–102. Moreover, there was no evidence that any of the proceeds allegedly used to benefit Palace were advanced as a loan, thereby creating a debt to the Fords rather than an equity investment in the business. Appellants therefore failed to show that the mortgage was paid in satisfaction of an antecedent debt to the Fords.

■ With respect to the transfer of the property at 1436 Chester Pike, appellants argue that before the fire Richard Simpson had performed services for Palace that had a value in excess of $20,000. See N.T. April 28, 1981, 22–59. Nevertheless, the trial court found, and the finding is supported by the record, that Palace did not incur a debt to Simpson in exchange for his services, but, rather, that Simpson obtained, or at least expected to obtain, an equity

interest in the business. *See id.* at 24 (there was no agreement, but Ford told Simpson that he would take care of him later), 82–84, 92 (Simpson was working to acquire "an interest in the business"). *Cf. Jarvis v. Bell,* 296 Pa. 568, 146 A. 153 (1929) (evidence was sufficient to establish fair consideration for father's conveyance of farm to son where there was evidence of express agreement that father would furnish capital, son would manage business and they would share net profits; evidence that son engaged in business extensively for nine years; evidence that father retained most of net profits throughout years; and evidence of express agreement that father would convey farm to son in satisfaction of his share of profits). Appellants further argue that the conveyance was made to repay the risk taken by the Fords when they created a mortgage on their personal residence for the benefit of Palace. As stated above, however, there was no evidence that the proceeds of the mortgage loan went to benefit Palace, or if they did, that they were advanced as a loan rather than as an equity investment. Appellants therefore failed to show that the conveyance was made in satisfaction of an antecedent debt to the Fords and the Simpsons.[3]

–3–

■ Appellants argue that there was inadequate proof of the amount of Palace's debt to Soda Rental at the time of the conveyances. There is no question, however, of the existence of a debt to Soda Rental at the time of the conveyances. The amount of the debt was relevant only to a determination of whether Palace was then insolvent, and as stated above, appellants bore the burden of proof on this issue. This argument is therefore without merit.

–4–

■ Appellants argue that Aetna, as the mortgagee of the property at 1436 Chester Pike, and not Palace, con-

---

3. Appellants also argue that "while speculative, it could be that the cost to demolish and remove whatever remainded [*sic*] of the building was in excess of the value of the underlying land." Appellants' Brief at 20. This argument is indeed speculative, and is not supported by any evidence.

trolled the disbursement of the insurance proceeds, and that it required the satisfaction of the mortgage on 66 South Rolling Road from the proceeds of the insurance settlement.[4] This argument is contrary to the record. Elizabeth Milacsky, the vice president of Aetna, testified that Aetna's policy was to take its share of the proceeds from the insurance settlement in order to satisfy the mortgage on the damaged property and to pay the remaining proceeds to the owner of the property. N.T. April 15, 1981, 70. She further testified that Aetna would have released $48,000 to the Fords if they had so requested, rather than use the $48,000 to satisfy the mortgage on 66 South Rolling Road. *Id.* at 81–82, 86–88. This testimony was supported by Plaintiff's Exhibit 7, which was a letter from Nicola Ford, written in his capacity as secretary/treasurer of Palace, to William Ciarrocchi, former president of Aetna, directing, among other things, that disbursements be made from the insurance proceeds to satisfy the loan secured by the mortgage on 66 South Rolling Road. *Id.* at 57–65.

–5–

■■■ Finally, appellants argue that an equitable lien cannot be enforced against the property at 66 South Rolling Road because that property is owned by the Fords as tenants by the entireties. Appellants argue that there was no showing that Doris Ford received any benefit from the loan secured by the property at 66 South Rolling Road or that she played a part in causing Palace to satisfy the mortgage. From this they argue that because Nicola Ford alone benefitted from the loan and alone caused Palace to satisfy the mortgage the obligation to satisfy Soda Rental's claim is also his alone. This argument, however, overlooks the fact that section 4 of the Uniform Fraudulent Conveyance Act operates without regard to the parties' intent. *See First National Bank of Marietta v. Hoffines, supra.* Regardless of Doris Ford's intent, the mortgage on property that she owned was satisfied by Palace at a time when

4. The significance of this argument is not entirely clear. Appellants' argument is apparently that Palace did not convey any of its property.

Palace was indebted to Soda Rental, and appellants have failed to show that Palace was not insolvent or rendered insolvent at that time or that it received fair consideration. This is sufficient to establish a fraudulent conveyance to Nicola and Doris Ford under section 4.

Order of the trial court affirmed.