MARIA MERLINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merlino v. Commissioner
Docket No. 2642-93
United States Tax Court
T.C. Memo 1995-208; 1995 Tax Ct. Memo LEXIS 216; 69 T.C.M. (CCH) 2592; May 16, 1995, Filed *216 Decision will be entered under Rule 155. For petitioners: Mark E. Cedrone. For respondent: David A. Breen. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined that petitioner, as the transferee of assets of Joseph Merlino, is liable for unpaid Federal income taxes of Joseph Merlino for the taxable year 1987, in the amount of $ 139,964, plus 50 percent of the interest due on $ 77,587, [1] plus interest as provided by law. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue for decision is whether petitioner *217 is liable as the transferee of assets of Joseph Merlino under Pennsylvania State law and section 6901, and, if so, the amount of such liability. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The first and second stipulations of facts and the exhibits attached thereto are incorporated herein by this reference. Maria Merlino (petitioner) resided in Philadelphia, Pennsylvania, at the time she filed her petition in this case. Petitioner and Joseph Merlino (Joseph) are sister and brother. The property at issue in this case is a single-family dwelling located at 1917 Hartranft Street in Philadelphia, Pennsylvania (the Hartranft residence). The Hartranft residence became the home of petitioner, Joseph, their mother, Rita Merlino (Rita), and their younger sister, Natalie Merlino (Natalie), on July 30, 1986. Prior to that date, the family resided in a house belonging to petitioner's grandmother at 927 Jackson Street, Philadelphia, Pennsylvania. [2]
*218 The purchase of the Hartranft residence was pursuant to an Agreement for the Sale of Real Estate, dated May 5, 1986, and signed by petitioner and Joseph, as buyers, and by Raymond and Carmella DiPrimio, as sellers. At that time, petitioner was unemployed and had a bad credit rating; thus, she was unable to secure a mortgage to purchase the property. Joseph was able to qualify for a mortgage, provided the property was titled in his name. As a result, on July 30, 1986, Carmella DiPrimio, individually, conveyed title to the residence to Joseph in exchange for the sum of $ 125,000, which consisted of a $ 100,000 cash downpayment and the proceeds of a $ 25,000 mortgage from Capitol Mortgage Company (Capitol). Rita provided $ 91,900 of the cash downpayment. [3]
*219 Following the purchase of the Hartranft residence, petitioner, concerned about the ramifications of having the property titled solely in Joseph's name, sought legal counsel. In a letter dated April 21, 1987, Fred Levin (Levin), an attorney at the firm of Stradley, Ronon, Stevens & Young, wrote to petitioner regarding the transfer of title to the residence, the money used for the downpayment, and a trust agreement among the siblings. He advised that transferring the title to the residence from Joseph to the three siblings would trigger the due-on-sale clause of the mortgage. To minimize the chances of triggering the clause, he suggested transferring the title from Joseph to his mother and then to "Joseph Merlino, Trustee", a minor change that likely would go unnoticed. He proposed a trust document which would place the residence into the trust, name Joseph as trustee, and provide for payment of the mortgage and other house-related expenses. Levin warned, however, that if the deed or trust were not recorded, the interests of petitioner and Natalie would not be protected against Joseph's creditors. Levin thought that Salvatore, petitioner's father, had provided the $ 91,900 for *220 the purchase of the residence. Levin proposed treating the "funds advanced by your father for the purchase of the house" as loans of $ 30,000 to each of the three children, which the father could forgive at the rate of $ 10,000 per child per year and avoid any gift tax liability. Levin also warned petitioner, however, that the loan notes would be subject to the claims of Salvatore's creditors. On May 19, 1987, Levin wrote another letter to petitioner, enclosing several documents for signature. These documents included: (1) A deed conveying the Hartranft residence from Joseph to Rita; (2) a deed conveying the Hartranft residence from Rita and Salvatore to Joseph, petitioner, and petitioner as custodian for Natalie, as joint tenants; (3) transfer affidavits for the deeds to be used in recording the deeds; (4) three promissory notes, one from each of the Merlino children to their mother; and (5) a declaration of trust among Joseph, petitioner, and Natalie. Levin cautioned that recording the deeds and affidavits technically would trigger the due-on-sale clause of the Jefferson Bank mortgage (the assignee of Capitol), should the bank become aware of the transfer. Yet, at the same *221 time, Levin again warned of the limited protection for petitioner if the deeds and/or trust remained unrecorded, and recommended that the mortgage be refinanced and the title transferred to all three Merlino children at settlement. On June 10, 1987, the deeds, transfer affidavits, promissory notes, and declaration of trust were executed. As a result, Joseph conveyed title to the residence to his mother, Rita Merlino; the deed stated the consideration as $ 1. Rita then transferred title to the residence to Joseph, petitioner, and petitioner as custodian under the Pennsylvania Gift to Minors Act for the benefit of Natalie, as joint tenants with a right of survivorship; again, the stated consideration was $ 1. Neither the deeds nor the trust documents were recorded. Although the stated consideration was $ 1, Joseph, petitioner for herself, and petitioner for Natalie each executed a promissory note to Rita as payee in the principal amount of $ 30,000 with an annual interest rate of 7 percent. The notes provided for an annual payment of $ 10,000 on July 1 of the years 1987, 1988, and 1989; any remaining indebtedness was due on July 1, 1990. Rita had the option in each year of the *222 term of the note to waive her right to that year's payment. The children did not make any payments on the notes to their mother. Joseph, as trustee for the above joint tenants, signed the declaration of trust. The declaration of trust placed the responsibility for the payment of any taxes, water and sewer charges, municipal assessments, and any other expenses, including repairs of the premises, on Joseph but provided that the ultimate cost of any such payments was to be borne by the three siblings in such proportion as they deemed appropriate. The record does not disclose whether and, if so, how the siblings actually shared these expenses. Under the declaration of trust, Joseph, petitioner, and Natalie did not have the right to collect any rent from each other, absent the prior written consent of all three. On September 23, 1987, Joseph, Stephen Rinaldi (Rinaldi), and Richard Barone (Barone) stole $ 352,150 from a Federal Armored Express Company, Inc., armored car. On December 30, 1988, over a year after the theft, Joseph conveyed title to the Hartranft residence to petitioner, the deed listing the consideration as $ 1. The fair market value of the entire house in fee simple *223 on December 30, 1988, was $ 130,000. The deed was recorded on January 13, 1989. According to a letter from Jefferson Bank, dated December 19, 1988, the payoff amount of the mortgage on the residence, calculated as of December 31, 1988, was $ 22,466.25. On December 30, 1988, Fidelity Bank issued a cashier's check in the amount of $ 22,988 to Jefferson Bank. This was the same day that petitioner's grandmother, Mary Merlino (Mary), withdrew $ 10,000 from her checking account and redeemed two certificates, one for $ 9,829.64 and another for $ 4,185.53, all on deposit at Fidelity Bank. Jefferson Bank certified satisfaction of the mortgage on January 9, 1989. Petitioner signed a mortgage dated December 1988 and a mortgage note dated December 30, 1988, to Mary, in the amount of $ 23,000. The mortgage and note were not recorded until July 5, 1991. As of the time of the trial in this case, petitioner had made no payments on this mortgage. On January 12, 1990, Joseph was found guilty of the following charges arising from the September 23, 1987, armored car theft: (1) Conspiracy to commit an offense against the United States (count 1); (2) theft from an interstate shipment (count 2); *224 (3) receipt of money taken from an interstate shipment (count 3); and (4) aiding and abetting with respect to counts 2 and 3. As a result of his conviction, Joseph was sentenced to prison for a period of 4 years and, upon release, probation for 5 years, including 6 months in a community treatment center. In addition, Joseph and his conspirators, Rinaldi and Barone, were ordered to make restitution of the entire proceeds of the armored car theft. As of the date of the trial in this case, however, restitution had not been made, and none of the $ 352,150 in cash stolen from the armored car had been recovered. On April 29, 1991, petitioner signed a mortgage note securing a home equity line of credit from Fidelity Bank on the Hartranft residence in the amount of $ 20,000. On June 25, 1991, petitioner encumbered the Hartranft residence with a $ 33,000 mortgage from Michael Baldino, Sr., Anna Baldino, and Michael Baldino, Jr.; this mortgage was recorded on July 5, 1991. On July 22, 1992, petitioner signed a mortgage note, secured by the Hartranft residence, promising to pay the amount of $ 91,962.10 to George and Clementine Durkin, trustees for Natalie, the mortgagee. The stated purpose *225 of this purported mortgage note was to secure for Natalie an interest in the Hartranft residence to the extent of that $ 91,962.10 amount. As of the time of the trial, petitioner had made no payments on any of these mortgages. The real estate taxes on the Hartranft residence have been approximately $ 2,100 per year; petitioner deducted these real estate taxes on her 1990, 1991, and 1992 individual tax returns. Joseph did not file a Federal income tax return for the taxable year 1987. As of December 30, 1988 (the date of the transfer of title in the Hartranft residence from Joseph to petitioner), Joseph's tax liability, including interest, for the taxable year 1987 totaled $ 148,814. [4] On November 10, 1992, respondent issued a notice of transferee liability to petitioner, based on that December 30, 1988, transfer. As of November 10, 1992, Joseph's tax liability for 1987, including interest, was $ 210,014, none of which had been paid. This Court sustained respondent's determination of Joseph's 1987 tax year liability in Merlino v. Commissioner, T.C. Memo. 1993-200, filed May 11, 1993, and entered a decision against Joseph on May 24, 1993. Respondent *226 assessed Joseph's 1987 tax liability on October 8, 1993. As of the date of the trial in this case, Joseph had not paid any of the 1987 deficiency, additions to tax, or interest. On March 17, 1994, respondent served Joseph with a notice of deposition at the Federal Correctional Institution in Allenwood, Pennsylvania (Allenwood) where he was incarcerated. On March 25, 1994, respondent served a subpoena duces tecum on Joseph at Allenwood in connection with the notice of deposition. Joseph's counsel, Joseph C. Santaguida, informed respondent in a letter dated March 17, 1994, that, if respondent attempted to depose Joseph, Joseph would invoke his Fifth Amendment privilege and would refuse to testify, even if ordered by this Court to do so. Joseph was *227 the subject of a continuing criminal investigation by Federal and State law enforcement agencies and faced possible indictment on additional charges. Prior to April 1994, the collection of Joseph's 1987 tax liability had been assigned to Revenue Officer Zeke Reid (Reid). The duties of a revenue officer include searching for assets the taxpayer may own. In searching for Joseph's assets, Reid instructed a revenue aide to research courthouse and Bureau of Motor Vehicles records. The aide checked for personal property (UCC filings) and real estate; no one checked for judgments. In April 1994, the collection of Joseph's 1987 tax liability was assigned to Leslie Howard (Howard), a revenue officer with 15 years' experience with the Internal Revenue Service (IRS). In attempting to identify bank accounts, Howard requested a search of the IRS records of 1098 statements; these records go back to the year 1986. At the time of the trial in this case, Howard was awaiting some of the 1986 and 1987 records. The only asset located through all of these endeavors was the Hartranft residence. The real estate records indicated that Joseph had owned the residence, but had transferred it to petitioner *228 on December 30, 1988, for $ 1. Other than the Hartranft residence, Joseph did not own any property. He did not own any sports cars, Rolex watches, or other assets. On May 10, 1994, respondent sent a Notice of Intent to Levy (Letter 1058) to Joseph at the 1917 Hartranft Street address. Normally, before a Notice of Intent to Levy is sent, several other notices and/or demands for payment are sent. According to IRS records, three of these notices were prepared; the entries related to these notices contained "suppress" codes, indicating the mailing of these notices may have been delayed. Howard saw nothing in Joseph's record, however, from which to conclude these notices were not issued. Although revenue officers usually meet with the delinquent taxpayers from whom they are trying to collect, Howard did not attempt to meet with Joseph. Based on the experience related by a revenue agent, she believed Joseph did not wish to be contacted. No one from the Collection Division interviewed anyone in Joseph's family concerning the existence or whereabouts of any assets owned by him. Nor did anyone from the Collection Division contact Joseph's probation officer. However, petitioner admitted *229 at the trial that the Merlinos were a close family and that to the best of her knowledge Joseph had no assets other than the Hartranft residence. OPINION Section 6901 permits respondent, in certain circumstances, to proceed directly against a transferee of assets for the assessment and collection of the unpaid income tax liability of the transferor. Phillips v. Commissioner, 283 U.S. 589, 592 and n.3 (1931) (discussing the Revenue Act of 1926, ch. 27, sec. 280, 44 Stat. 9, 61, the predecessor to sec. 6901); Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). Section 6901 does not create or define a transferee's liability. It merely provides a procedure by which taxes owed by a transferor may be collected from a transferee. Commissioner v. Stern, 357 U.S. 39, 42-43 (1958); Phillips v. Commissioner, supra at 602; Hagaman v. Commissioner, 100 T.C. 180, 183 (1993). The existence and extent of a transferee's liability, at law or in equity, is determined by State law. Commissioner v. Stern, supra at 44-45; *230 Hagaman v. Commissioner, supra at 183-185. Thus, State law determines the elements of liability, and section 6901 provides the remedy or procedure to be employed by respondent as the means of enforcing that liability. Ginsberg v. Commissioner, 305 F.2d 664, 667 (2d Cir. 1962), affg. 35 T.C. 1148 (1961). Respondent bears the burden of proving petitioner's liability as a transferee. Sec. 6902; Rule 142(d). In this case, transferee liability must be established under Pennsylvania law since the transfer of the property occurred in Pennsylvania. Adams v. Commissioner, 70 T.C. 373, 390 (1978), supplemented by 70 T.C. 446 (1978), affd. without published opinion 688 F.2d 815 (2d Cir. 1982). The Pennsylvania Fraudulent Conveyances Act provides: Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.
*231 Pa. Stat. Ann. tit. 39, sec. 354 (1954). Pennsylvania law places the burden of proof as follows: When the conveyor is in debt at the time of the conveyance, "the burden rests upon the grantee to establish by clear and convincing evidence that either the conveyor was solvent and was by such conveyance not rendered insolvent; or that a fair consideration had been paid for the conveyance." United States v. St. Mary, 334 F. Supp. 799, 804 (E.D. Pa. 1971).
United States v. Purcell, 798 F. Supp. 1102, 1111 (E.D. Pa. 1991), affd. without published opinion 972 F.2d 1334 (3d Cir. 1992); see also First Natl. Bank of Marietta v. Hoffines, 429 Pa. 109, 239 A.2d 458 (1968); Coscia v. Hendrie, 427 Pa. Super. 585, 629 A.2d 1024 (1993). Thus, respondent must show that Joseph was in debt at the time he transferred the Hartranft residence to petitioner. If respondent meets this burden, the burden then shifts to petitioner to prove either that Joseph was solvent at the time of the transfer and not rendered *232 insolvent by the transfer or that petitioner paid fair consideration for the property transferred. Transfer of Property from Joseph to Petitioner
Petitioner argues that Rita provided most of the funds required to purchase the Hartranft residence and, in doing so, intended to make a gift to her three children. The title to the property was placed in Joseph's name because he was the only member of the family who could qualify for a mortgage, and the lender required that title be placed in his name. Petitioner argues that Joseph held legal title, but that Joseph, petitioner, and Natalie equally shared the beneficial interests in the residence. Petitioner contends that the deeds transferring title from Joseph to Rita and then from Rita to Joseph as trustee, as well as the trust document, support her position. Petitioner also claims that, on December 30, 1988, she purchased Joseph's one-third interest in the property and paid fair consideration by paying off the mortgage balance. Respondent argues that Joseph owned the Hartranft residence in fee simple and transferred the entire property to petitioner on December 30, 1988, for no consideration. In support of that position, *233 respondent argues that on December 30, 1988, the IRS was a creditor of Joseph and that under the Pennsylvania recording statutes, the unrecorded deeds dated June 30, 1987, are fraudulent and void as to the IRS. Respondent also argues that the declaration of trust should not be given retroactive effect to July 30, 1986, the date of the original purchase of the Hartranft residence from DiPrimio. Respondent challenges the validity of the unrecorded deeds of June 10, 1987, under Pa. Stat. Ann. tit. 21, sec. 444 (Pa. section 444), [5] which provides: All deeds and conveyances * * * shall be recorded * * * within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance * * * which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance * * *. [Emphasis added.]
Pa. Stat. Ann. tit. 21, sec. 444 (1955). Respondent argues that the IRS was a creditor of Joseph on April 15, 1988, when Joseph became liable for payment of his 1987 taxes. The deeds dated June 10, 1987, were *234 unrecorded as of April 15, 1988, when the IRS became a creditor. Therefore, respondent argues the IRS is protected under Pa. section 444. The Supreme Court of Pennsylvania has held that the words "any creditor of the grantor" in Pa. section 444 are inoperative, as no method was provided by which creditors could place themselves upon the record in advance of a deed or mortgage. Davey v. Ruffell, 162 Pa. 443, 29 A. 894 (1894); see also Rosa v. Hummel, 252 Pa. 578, 97 A. 942 (1916). The United States District Court for the Eastern District of Pennsylvania, however, has applied Pa. section 444 to lien creditors, specifically, to the IRS, which becomes a lien creditor once the tax deficiency is assessed. See United States v. Carson, 741 F. Supp. 92, 95 (E.D. Pa. 1990); *235 Raimo v. United States, 61 AFTR 2d 88-398, 88-1 USTC par. 9170 (E.D. Pa. 1987) (both questioned in United States v. Purcell, 798 F. Supp. 1102, 1115-1116 n.6 (E.D. Pa. 1991) as to whether even lien creditors are protected under Pa. section 444). The Supreme Court of Pennsylvania has interpreted the term "creditors" in another recording statute, Pa. section 601, to mean creditors of like rank with judgment creditors, that is, lien creditors. Burns v. Coyne, 294 Pa. 512, 144 A. 667 (1928) (interpreting Pa. Stat. Ann. tit. 21, sec. 601).[6]
*236 In this case, the IRS did not assess Joseph's 1987 tax deficiency until October 8, 1993, and thus, did not become a lien creditor until that date, which was after the IRS had notice of the transfer to petitioner. Secs. 6321, 6322. Therefore, the IRS can find no protection in Pa.section 444 with respect to the unrecorded deeds. Furthermore, under Pennsylvania law, a resulting trust may arise when legal title is placed in the name of someone other than the party providing the purchase money. Malamed v. Sedelsky,367 Pa. 353, 80 A.2d 853 (1951) (couple placed home in brother's name to obtain a Veterans' Administration loan); Rosa v. Hummel, supra.In such situations, the legal title holder is trustee for the true owners. Malamed v. Sedelsky, supra; Galbraith v. Galbraith, 190 Pa. 225, 42 A. 683 (1899). However, where a parent provides the purchase money and places the title in the name of a child, it is presumed to be a gift to that child and "a resulting trust does not arise unless the *237 [parent] manifests an intention that the [title holder] should not have the beneficial interest in the property." Kohr v. Kohr, 271 Pa. Super. 321, 327, 413 A.2d 687, 689-690 (1979) (quoting Restatement (Second) of Trusts Sec. 442 (1959)). Pa. section 601 protects "judgment and other creditors" from unrecorded purchase money trusts. See supra note 6. However, the delivery of a deed transferring legal title to the beneficiary of a trust extinguishes the purchase money trust. Malamed v. Sedelsky, supra; Beman Thomas Co. v. White, 269 Pa. 261, 112 A. 37 (1920). The failure to execute and record a purchase money trust document prior to the extinguishment of the trust has no effect on a creditor whose judgment is entered or lien attaches after the termination of the trust. Ehnes v. Yowell, 374 Pa. 17, 97 A.2d 56 (1953); Malamed v. Sedelsky, supra; Burns v. Coyne, supra; Beman Thomas Co. v. White, supra. *238 In the case before this Court, Rita contributed $ 91,900 toward the purchase of the residence, intending to provide a home for herself and her three children. While she wished Joseph to have some beneficial interest in the residence, the purchase was not intended to be solely for his benefit to the exclusion of the other members of the Merlino family. Rita herself resided in the residence and derived a benefit. Joseph, although he held legal title to the residence, was intended to be trustee, not sole owner, of the residence. When Joseph transferred title to Rita on June 10, 1987, he placed title in the name of the purchase money owner and ended his resulting trust relationship with his mother. As respondent's claim arose after the extinguishment of the resulting trust, and respondent did not have the status of a lien creditor at that time, this transfer of title was not void as to respondent by reason of Pa.section 601. On the same day, June 10, 1987, Rita placed title to the residence in the names of her three children as joint tenants. The correspondence between petitioner and her attorney in April and May of 1987, and the deeds and promissory notes executed on June 10, *239 1987, serve to confirm that the parents intended Joseph, Maria, and Natalie, as joint tenants, to be the beneficial owners of the residence. The declaration of trust signed by Joseph on that day set out the agreement of the owners and his responsibilities as trustee. Although the deed from Rita to her children was not recorded, the recording statutes do not protect respondent against this deed. See the discussion of Pa. section 444 above. The declaration of trust, also unrecorded, was not a purchase money trust and thus not within the scope of Pa.section 601. [7] *240 Pa. Stat. Ann. tit. 21, sec. 601 (1955); Malamed v. Sedelsky, supra; Rosa v. Hummel, supra.Therefore, none of the June 10, 1987, transactions was void as to respondent. [8]
When Joseph as trustee conveyed legal title to the Hartranft residence to petitioner, on December 30, 1988, only one-third of the property conveyed represented Joseph's interest in the residence. Therefore, we find that petitioner received a one-third interest in the Hartranft residence as a transferee of Joseph's property. Joseph Indebted at the Time of the Transfer
Respondent argues that on December 30, 1988, when Joseph transferred the Hartranft residence to petitioner, he was in debt. The evidence clearly supports respondent's position. Joseph owed Federal Armored Express Company, Inc., for the money stolen *241 on September 23, 1987. His resulting 1987 tax liability for that stolen money arose no later than April 15, 1988. Tax liabilities, though unassessed, are obligations deemed due and owing at the close of the taxable year. Stansbury v. Commissioner, 104 T.C.    ,     (1995); Hagaman v. Commissioner, 100 T.C. at 185. Such taxes are due and owing and constitute a liability as of the date the return for that year is required to be filed. Hagaman v. Commissioner, supra at 188. Joseph's tax liability remained unpaid on December 30, 1988. The balance on the mortgage on the Hartranft residence on the date of the transfer was $ 22,466.25, some portion of which was owed by Joseph. Respondent has shown that Joseph was in debt on December 30, 1988. Respondent has met her burden in proving that the transfer of property from Joseph to petitioner occurred when Joseph was in debt. The burden under Pennsylvania law now shifts to the petitioner who, to defeat the allegation of a fraudulent conveyance, must show that either (1) Joseph was solvent at the time of the conveyance and not rendered insolvent by the conveyance, *242 or (2) fair consideration was given by her for the property. United States v. Purcell, 798 F. Supp. at 1111; First Natl. Bank of Marietta v. Hoffines, 239 A.2d at 462; Coscia v. Hendrie, 629 A.2d at 1026; cf. Hagaman v. Commissioner, 100 T.C. at 186, 188, 189. Insolvency of Transferor
According to the Pennsylvania statute, A person is insolvent when the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.
Pa. Stat. Ann. tit. 39, sec. 352(1) (1954). At the time of the transfer, the residence had a fair market value of $ 130,000. Joseph owned only a one-third interest. Petitioner offered no evidence of Joseph's owning any other assets and indeed admitted at trial that he had no other assets. Joseph's liabilities on that day included his 1987 tax bill ($ 148,814, including additions and interest), restitution of the money from the theft ($ 352,150), and some portion of the balance of the *243 mortgage on the Hartranft residence ($ 22,466.25). [9] Joseph's debts greatly exceeded the value of his one-third share in the residence, and therefore, Joseph was insolvent at that time. Fair Consideration
According to the Pennsylvania statute: Fair consideration is given for property or obligation: (a) When, in exchange for such property or obligation, as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied; * * *
Pa. Stat. Ann. tit. 39, sec. 353(a) (1954). Petitioner must show that she gave Joseph a fair equivalent for his share of the residence either in property or by satisfaction of a prior debt. Section 354 of the Pennsylvania Fraudulent Conveyances Act, quoted above, applies only to the debtor's own property, not to property which he holds in trust. Malamed v. Sedelsky, 367 Pa. at 359. The transfer of property by a trustee to a beneficiary *244 is a conveyance for value, so Joseph's transfers of petitioner's portion and Natalie's portion were for value. Id.; Ehnes v. Yowell, 374 Pa. at 20; Burns v. Coyne, 294 Pa. at 517. Thus, we must look only at Joseph's actual one-third interest when deciding whether the December 30, 1988, transfer was fraudulent. Petitioner has shown that upon transfer of the Hartranft residence, the mortgage was paid in full with Mary's funds. The expenses of the residence were the joint responsibility of the owners, to be allocated as they deemed appropriate. Since Joseph was one of three co-owners of the residence, only a portion of the remaining mortgage debt and residence expenses should be attributed to him. However, the record is silent as to how the owners allocated the responsibility for the mortgage payments or the house expenses. We need not speculate as to what Joseph's portion was, or consider whether relief from this debt is an equivalent value for his interest in the residence, or for any part thereof, since petitioner has provided no evidence to show that the satisfaction of the debt *245 was in exchange for the transfer of Joseph's interest to her. Petitioner did not testify concerning any relationship between the note she signed to Mary for $ 23,000 and Mary's payment of the Jefferson Bank mortgage, or between Mary's payment and Joseph's conveyance. Petitioner has not made any payments to Mary on the note. It is just as likely that Mary, in paying off the mortgage, was making a gift to her three grandchildren. Petitioner offered no evidence of any consideration. Petitioner must establish that either fair consideration was paid or that Joseph was solvent. As petitioner has not met this burden, we find that this conveyance was for no consideration at a time when Joseph was insolvent and, therefore, was fraudulent under Pennsylvania law. Value of the Transferred Property
Petitioner argues that respondent has not met her burden of proof of establishing the value of Joseph's interest. The value of the transferred property determines the limit of the transferee's liability. Gumm v. Commissioner, 93 T.C. 475, 480 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991); Stokes v. Commissioner, 22 T.C. 415, 428 (1954). *246 The parties stipulated that on December 30, 1988, the value of the property in fee simple was $ 130,000. While petitioner argues that the value of Joseph's one-third undivided interest was less than one-third of the fee simple value, there is no evidence to that effect, and there is no persuasive reason as to why that should be the case. We find Joseph's share to be one-third of $ 130,000, or $ 43,333. Exhaustion of Respondent's Collection Efforts
Petitioner argues that she cannot be held liable as transferee since respondent has not exhausted collection efforts against the transferor. Transferee liability in equity is a secondary collection effort which requires respondent to show that "all reasonable efforts to collect from the transferor were made and that further collection efforts would be futile." Gumm v. Commissioner, 93 T.C. at 480; Sharp v. Commissioner, 35 T.C. 1168, 1175 (1961). Whether respondent has made such efforts depends upon the facts of the particular case. Ranno v. Commissioner, T.C. Memo. 1990-599. Respondent need not proceed against the transferor if to *247 do so would be a futile act. Coffee Pot Holding Corp. v. Commissioner, 113 F. 2d 415 (5th Cir. 1940), affg. a decision of the Board of Tax Appeals dated October 7, 1936; Adams v. Commissioner, 70 T.C. at 390. The facts indicate that respondent searched for Joseph's assets, finding only the Hartranft residence. This asset Joseph had transferred to petitioner. Joseph was incarcerated. He was unwilling to cooperate with respondent's representatives in attempting to collect his tax obligation. It is unlikely that respondent would locate any other assets from which to collect Joseph's tax liability. We find respondent's efforts were reasonable under the circumstances. We hold that petitioner is liable as the transferee of Joseph Merlino in the amount of $ 43,333. Petitioner's Liability for Interest
Respondent has requested interest on the value of the property fraudulently conveyed. The interest from the date of transfer until the notice of transferee liability is determined by State law; interest from the date of the notice of transferee liability to the date of payment is imposed by section 6601. Patterson v. Sims, 281 F.2d 577, 580 (5th Cir. 1960); *248 Stansbury v. Commissioner, 104 T.C.    ,     (1995); Estate of Stein v. Commissioner, 37 T.C. 945, 959, 961 (1962). [10]
The Pennsylvania courts have allowed pre-judgment interest in breach of contract cases where damages were ascertainable. Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105, 117 A.2d 721 (1955); Burkholder v. Cherry, 414 Pa. Super. 432, 607 A.2d 745 (1992); *249 Movie Distributors Liquidating Trust v. Reliance Ins. Co., 407 Pa. Super. 588, 595 A.2d 1302 (1991). The amount of a claim is not rendered unascertainable merely because the breaching party has asserted a counterclaim. Burkholder v. Cherry, 607 A.2d at 748. The justification for awarding interest is that the debtor knew or could have known the amount of his debt, and by not tendering that amount he deprived the creditor of the use of that amount. Id. at 747. An action under the Pennsylvania Fraudulent Conveyances Act has been considered as one in quasi contract or contract implied in law. United States v. Durkin, No. 4:CV-89-1681 (M.D. Pa. August 14, 1990) (LEXIS, PA library, PAMEGA file) at page 13 (citing United States v. Neidorf, 522 F.2d 916 (9th Cir. 1975)). This is because the essence of the transferee liability proceeding is that of a creditor seeking payment. United States v. Neidorf, 522 F.2d 916, 918 (9th Cir. 1975). As Joseph knew or could have known the amount of money he stole from Federal Armored Express *250 Company, and knew or could have known his 1987 tax liability on that amount when due on April 15, 1988, the amount of Joseph's liability was ascertainable on that day. His petition to this Court does not render that liability unascertainable. Therefore, petitioner, as Joseph's transferee, is liable for interest at the rate of 6 percent from the date of the transfer of the residence (December 30, 1988) until the date of the notice of transferee liability (November 10, 1992). Pa. Stat. Ann. tit. 41, sec. 202 (1992). Thereafter, petitioner will be liable for interest as imposed by section 6601. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. For the 1987 taxable year, Joseph Merlino is liable for a deficiency in the amount of $ 77,587, plus additions to tax under sec. 6654 in the amount of $ 4,187, under sec. 6653(b)(1)(A) in the amount of $ 58,190, and under sec. 6653(b)(1)(B)↩ in the amount of 50 percent of the interest due on $ 77,587.
2. Petitioner's father, Salvatore Merlino (Salvatore), had resided at 927 Jackson St., but did not move into the residence at 1917 Hartranft St. because he was incarcerated at that time.↩
3. The parties have agreed that Rita provided the $ 91,900. However, some of the exhibits in the record indicate that Salvatore may have provided the funds. For purposes of this case, the Court will treat Rita as the source of the funds. It is clear that neither petitioner nor Joseph provided the $ 91,900.↩
4. This consisted of a deficiency in the amount of $ 77,587, plus additions to tax under sec. 6653(b)(1)(A) in the amount of $ 58,190, under sec. 6653(b)(1)(B)↩ in the amount of $ 2,950, and under sec. 6654 in the amount of $ 4,187, plus interest in the amount of $ 5,900.
5. Hereinafter Pennsylvania statutes will be referred to as "Pa. section", so as to avoid confusion with Internal Revenue Code sections.↩
6. Pa. Stat. Ann. tit. 21, sec. 601 (1955) states: Whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of the legal title in the name of another, * * * such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors↩ * * * without notice, unless either (1) a declaration of trust in writing has been * * * recorded * * * or (2) unless an action of ejectment has been begun * * *. [Emphasis added.]
7. Purchase money trusts are the only type of trust covered by this Pennsylvania recording statute. Malamed v. Sedelsky, 367 Pa. 353, 80 A.2d 853 (1951); Rosa v. Hummel, 252 Pa. 578, 97 A. 942↩ (1916).
8. Petitioner has argued that the events of June 10, 1987, and petitioner's testimony show that Rita intended her three children to be the beneficial owners from the date of the original purchase. We agree with respondent that such intent should not be attributed retroactively. Regardless, the result is the same for, if what petitioner argues is true, the trust effectively created on July 30, 1986, would not be a purchase money trust and Pa. sec. 601↩ would not apply at all.
9. See discussion under Fair Consideration, infra↩.
10. Any appeal in this case would lie to the United States Court of Appeals for the Third Circuit. In Poinier v. Commissioner, 858 F.2d 917 (3d Cir. 1988), revg. in part 86 T.C. 478 (1986), the Court of Appeals for the Third Circuit denied interest from the date of notice of transferee liability. The Poinier↩ case, however, involved sec. 6324(b) which limits a donee's liability for gift tax to the value of the gift; the limitation of sec. 6324(b) is not applicable in this case.